UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | |
|---|---|
| AMERICAN HUNTING INNOVATIONS, L.L.C. a/k/a RDT ARCHERY & a/k/a KEMPF CROSSBOWS; J & S R.D.T. ARCHERY, INC.; and JAMES J. KEMPF, an individual**,**<br><br>Plaintiffs,<br><br>v.<br><br>SAVAGE SPORTS CORPORATION; EXTREME TECHNOLOGIES, INC.; and EXTREME TECHNOLOGIES, INC. d/b/a BOWTECH,**,**<br><br>Defendants. | Case No. 3:12-cv-00096-HDV-RAW<br><br>**DEFENDANTS' MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Pursuant to Local Rule 7(d), defendants Savage Sports Corporation ("Savage"), Extreme Technologies, Inc., and Extreme Technologies, Inc. d/b/a Bowtech (collectively "Bowtech") submit this legal memorandum in support of Defendants' Motion for Partial Summary Judgment.

### I.   FACTUAL BACKGROUND

Defendants Savage and Bowtech ask this Court to enter a partial summary judgment dismissing defendant Savage from this lawsuit.  Plaintiffs' patent infringement claims, if they have one at all, lie against defendant Bowtech, not Savage.  Furthermore, the circumstances of this case provide no justification for holding Savage liable for any alleged direct infringement by Bowtech.

In their Complaint plaintiffs allege that defendants Bowtech and Savage have directly infringed United States Patent No. 7,708,001 (the "'001 Patent"), entitled "Bow."  (App. 2, 3-4.) As plaintiffs note in their Complaint, defendant Savage is a Delaware corporation with its

1

principal place of business in Westfield, Massachusetts.  (App. 2.)  Defendant Bowtech is an

Oregon corporation with its principal place of business in Eugene, Oregon.  (App. 2.)

Bowtech is a wholly-owned subsidiary of Savage.  (App. 15.)  On May 13, 2013, an

agreement was announced under which Savage will be sold to Alliant Techsystems, Inc.  (App.

15.)  Bowtech will not follow Savage to Alliant Techsystems, Inc., and once the sale of Savage

to Alliant Techsystems, Inc. closes, Savage will no longer own Bowtech.  (App. 15.)

Bowtech is engaged in the business of designing, manufacturing, marketing, and selling

bows.  (App. 15.)  Savage's primary business is the sale and distribution of hunting rifles.  (App.

15.)  During its ownership of Bowtech, Savage has not affirmatively engaged, in its own right, in

the design, manufacture, marketing, or sale of bows, including specifically the bow that plaintiffs

allege infringes their patent.  (App. 15-16.)

During Savage's ownership of Bowtech, Bowtech was and is managed by a Board of

Directors and through Bowtech's President, Mark Pezzoni.  (App. 16.)  Although Savage

typically had representation on Bowtech's Board of Directors, and Bowtech communicated with

Savage about its business operations, Bowtech's Board and Mark Pezzoni managed Bowtech's

business affairs.  (App. 16.)  At no point has Savage affirmatively directed or controlled

Bowtech's design, manufacturing, marketing, or sale of its bows.  (App. 16.)

Furthermore, Bowtech is a viable going-concern in its own right.  (App. 16.)  In

conducting its business, Bowtech's Board of Directors observes corporate formalities, including

holding annual meetings.  (App. 16.)

/ / /

/ / /

/ / /

PDX\123479\187268\JOR\11555339.1

## II.      ARGUMENT

### A.      Summary Judgment Standard

"[S]ummary judgment is appropriate where the pleadings, discovery materials, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Kountze ex rel. Hitchcock Foundation v. Gaines*, 536 F.3d 813, 817 (8th Cir. 2008).  No genuine issue of material fact exists if there is an absence of evidence supporting a jury verdict in favor of the nonmovant on the issue for which the moving party seeks summary judgment.  *See Great Plains Real Estate Dev., L.L.C. v. Union Central Life Ins.*, 536 F.3d 939, 944 (8th Cir. 2008).  "Once the movant has properly supported its motion, the nonmovant 'may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'"  *Pool v. Orkin, Inc.*, 2010 U.S. Dist. LEXIS 139068 *5-6 (S. D. Iowa Aug. 30, 2010) (quoting Fed. R. Civ. P. 56(e)) (alternation and ellipsis in original).

Defendants are entitled to partial summary judgment in this case because plaintiffs will be unable to create a genuine issue of material fact as to two issues.  First, plaintiffs will be unable to create an issue of fact as to whether defendant Savage engaged in any act of alleged direct infringement in its own right.  Second, plaintiffs will be unable to create an issue of fact as to whether Savage should be liable for any alleged direct infringement by Bowtech,[1] because plaintiffs will be unable to point to any evidence justifying the disregard of Savage's separate corporate existence.

---

[1] Defendants emphasize that, in arguing that defendant Savage cannot be held liable in this case for direct infringement unless Savage is held liable for Bowtech's alleged infringement, defendants in no way concede that defendant Bowtech engaged in any direct infringement of plaintiffs' patent.  Nothing in this motion should be construed as making any such concession.

PDX\123479\187268\JOR\11555339.1

**B.**     **Savage can be liable in this action only if this Court disregards the separate corporate existence of Bowtech and Savage.**

Plaintiffs allege that both defendant Bowtech and defendant Savage directly infringed plaintiffs' patent.  Direct patent infringement is the unauthorized making, using, or selling of a patented invention within the United States.  35 U.S.C. § 271(a).  Here, although Savage is Bowtech's parent company, Savage has not affirmatively engaged, in its own right, in the design, manufacture, marketing, or sale of bows, nor has Savage at any time affirmatively directed or controlled Bowtech's manufacturing, marketing, or sale of its bows.  (App. 15-16.)  More specifically, Savage is not affirmatively involved in the design, manufacture, marketing, or sale of the bow that plaintiffs in this case allege infringes the '001 Patent.  (App. 15-16.)  In short, Savage's sole connection to this lawsuit is Savage's status as Bowtech's parent company.

In light of that, there is no genuine issue of fact as to whether defendant Savage, in its own right, engaged in direct infringement of plaintiffs' patent.  *See* 35 U.S.C. § 271(a) (defining direct infringement).  Instead, plaintiffs must find some basis on which to hold Savage liable for defendant Bowtech's alleged infringement of plaintiff's patent.

Plaintiffs have only one means of doing so.  Where a parent corporation's subsidiary has engaged in direct infringement, the parent can be liable for the subsidiary's infringement *only* if the circumstances of the particular case justify disregarding the parent company's separate corporate existence.  *See A. Stucki Co. v. Worthington Indus., Inc.*, 849 F.2d 593, 596 (Fed. Cir. 1988); *Maxwell v. K Mart Corp.*, 851 F. Supp. 1343, 1348 (D. Minn. 1994) (noting that the parent corporation could be liable for the direct infringement of another, related company only "if the evidence reveals circumstances justifying disregard of [the two companies] as distinct, separate corporations"); *see also Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 265-66 (D. Del. 1989) (turning to "alter ego" theory of liability for direct infringement after rejecting

4

theory that related company directly infringed in its own right); *cf. Wechsler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286, 1294-95 (Fed. Cir. 2007) (employing same analysis in patent infringement lawsuit).

> **C.      Plaintiffs cannot carry their burden of showing that the circumstances of this case justify disregarding Savage's separate corporate existence under either of two applicable Iowa state-law doctrines.**

As the Federal Circuit has noted, because the issue whether the separate corporate existence of two related companies should be disregarded "is not unique to patent law, [courts] apply the law of the regional circuit" in analyzing that question. *Wechsler*, 486 F.3d at 1295. And the Eighth Circuit, in turn, applies the law of the forum state in assessing whether an entity's corporate form should be disregarded. *See HOK Sport, Inc. v. FC Des Moines, L.C.*, 495 F.3d 927, 935 (8th Cir. 2007) (looking to Iowa-state law for the legal principles that govern that issue); *cf. also Wechsler*, 486 F.3d at 1295 (looking to California state law on that issue).

Iowa law supplies two separate but related doctrines governing when an entity's corporate form may be disregarded. Specifically, "[u]nder Iowa law, an entity's corporate form can be disregarded either by applying the *alter ego doctrine* or by *piercing the corporate veil*." *Id.* (emphases added) (citing *Team Cent., Inc. v. Teamco, Inc.*, 271 N.W.2d 914, 923 (Iowa 1978)).

Certain general principles apply to both doctrines. First, the mere "[o]wnership by a parent corporation of the stock of another corporation does not create an identity of corporate interest between the two corporations so as to render acts by one . . . the acts of another." *See Pool*, 2010 U.S. Dist. LEXIS 139068 at *27 (quoting *Schnoor v. Deitchler*, 482 N.W.2d 913, 915 (Iowa 1992)). Instead, substantially more is required, because "[d]isregarding [an] entity's corporate form under either the alter ego doctrine or the remedy of piercing the corporate veil *is*

5

*an extraordinary measure that should be reserved for exceptional circumstances.*" *HOK Sport, Inc.*, 495 F.3d at 935 (emphasis added) (citing *In re Ballstaedt*, 606 N.W.2d 345, 349 (Iowa 2000)).  And, significantly, it is the party who asks the court to disregard an entity's separate corporate existence who bears the burden of proving that the circumstances are so exceptional as to justify doing so.  *HOK Sport, Inc.*, 495 F.3d at 935 (citing *C. Mac. Chambers Co. v. Iowa Tae Kwon Do Acad., Inc.*, 412 N.W.2d 593, 598 (Iowa 1987)).

As explained below, plaintiffs will be unable to carry their burden of proving that the circumstances of this case justify disregarding Savage's separate corporate existence and exposing Savage to liability for any alleged direct infringement by Bowtech.

> **1.      No evidence in this case justifies "piercing the corporate veil" of Savage.**

The first basis on which plaintiffs could seek to hold Savage liable for any alleged direct infringement by Bowtech is by producing evidence justifying "piercing" Savage's "corporate veil."  "Piercing the corporate veil is a common-law equitable remedy whereby an entity's corporate form is disregarded to prevent injustice."  *HOK Sports, Inc.*, 495 F.3d at 935-36 (citing *Grand Lodge of Iowa of the Indep. Order of Odd Fellows v. Osceola Lodge No. 18*, 178 N.W.2d 362, 368 (Iowa 1970)).  As noted above, a parent company's ownership interest in a subsidiary is not alone sufficient to disregard the separate corporate existence of the parent.  *See HOK Sports, Inc.*, 495 F.3d at 936 (quoting *Team Cent., Inc.*, 271 N.W.2d at 923).  And further, even "identity of . . . corporate management is not alone sufficient to permit a piercing of the corporate veil.'" *Id.*

Determining whether the circumstances of a case justify piercing the corporate veil entails a multi-factor inquiry.  In the context of this case, courts look to whether

6

"(1) the [subsidiary] is undercapitalized, (2) [the subsidiary is] without separate books, (3) [the subsidiary's] finances are not kept separate from [the parent's] finances, and [the subsidiary's] obligations are paid by the [parent], (4) the [subsidiary] is used to promote fraud or illegality, (5) corporate formalities are not followed [by the subsidiary,] or (6) [the subsidiary] is merely a sham."

*HOK Sports, Inc.*, 495 F.3d at 936; *see also C. Mac Chambers*, 412 N.W.2d at 598 (noting same).

This Court applied that analysis in *Pool*. There, the plaintiff sought to hold the parent company liable for its wholly-owned subsidiary's alleged misconduct. *See* 2010 U.S. Dist. LEXIS 139068 *1-5. In support of piercing the parent's corporate veil, plaintiff pointed to the facts that the parent and subsidiary had common managers or directors, that they consistently filed consolidated financial statements and tax returns, that the subsidiary was the primary source of the parent's income, and that the parent exercised complete control over the subsidiary. *Id.* at *29.

This Court declined to pierce the parent's corporate veil. *See id.* at *29-30. Importantly, in doing so this Court did not simply catalogue evidence suggesting that a factual predicate of the piercing-the-corporate-veil analysis was present. Rather, this Court emphasized that none of the evidence was consistent with the conclusion that the subsidiary was "a mere shell" or was "merely a sham or [was] used to promote fraud or illegality." *Id.* Instead, the evidence showed the subsidiary to be a viable going-concern in its own right. *See id.* (noting that the plaintiffs conceded that the subsidiary corporation was the parent's largest source of income). This Court noted further that the subsidiary in *Pool* observed corporate formalities and no evidence suggested that it was undercapitalized. *Id.* This Court also acknowledged that "the filing of consolidated financials and the existence of some common directors or managers are relevant to

7

the analysis," but this Court found those facts "legally insufficient to justify the remedy of veil

piercing. *Id.* at *30.

Just as in *Pool*, the circumstances of this case present a legally insufficient basis on which

to conclude that Savage's "corporate veil" should be "pierced" such that Savage should be

exposed to liability for alleged direct infringement by Bowtech. Plaintiffs will be unable to come

forward with any evidence, as it will be their burden to do, that Bowtech is a mere shell

corporation, rather than a viable going concern in its own right. Most importantly, plaintiffs will

be unable to offer any proof whatsoever that Savage used Bowtech to promote fraud or illegality.

In short, plaintiffs will be unable to offer any evidence persuading this Court that this case

presents a different situation than the one presented to this Court in *Pool*. Consistently with that

decision, defendants' motion for partial summary judgment should be granted.

### 2. Bowtech is not the "alter ego" of Savage.

Similarly, no evidence in this summary judgment record justifies exposing Savage to

liability for any alleged direct infringement by Bowtech under the "alter ego" doctrine. As the

Eighth Circuit has explained, that doctrine "disregards an entity's corporate form if the entity is

'merely an instrumentality or device set up to ensure the avoidance of legal obligation.'" *HOK*

*Sport, Inc.*, 495 F.3d at 935 (quoting *Benson v. Richardson*, 537 N.W.2d 748, 762 (Iowa 1995)).

The doctrine is an equitable one, which is designed to "further the public convenience, cure

wrongs, protect against fraud, and advance the ends of justice[.]" *Id.*

In determining whether a corporate entity has an "alter ego" for whose acts the entity

should be held to answer, courts look to three factors. In the context of this case, a wholly-

owned subsidiary "is the alter ego of [the parent corporation] if (1) the [parent] influences and

governs the entity; (2) a unity of interest and ownership exists such that the [subsidiary] and the

8

[parent] cannot be separated; and (3) giving legal effect to the fictional separation between the [subsidiary] and the [parent] would 'sanction a fraud or promote injustice.'" *HOK Sport, Inc.*, 495 F.3d at 935; *see also Odd Fellows*, 178 N.W.2d at 368.[2]

Like the doctrine of piercing the corporate veil, the alter ego doctrine is not intended to collect rote factual predicates concerning the relationship between two companies; rather, the focus is whether all of the evidence of the companies' relationship, taken together, supports the conclusion that the parent is using the subsidiary to avoid a legal obligation. *See id.* And for the same reasons why the circumstances of this case do not justify piercing Savage's corporate veil, this case provides a legally insufficient evidentiary basis to hold Savage liable for any alleged infringement by Bowtech under the alter ego doctrine.

Plaintiffs will be unable to offer any evidence—as again, it will be their burden to do— showing that Savage and Bowtech are so intertwined as to render their separate corporate existence "fictional." And there is an utter absence of evidence supporting the conclusion that failing to disregard Bowtech's and Savage's separate corporate existence would sanction injustice. *Cf. Pool*, 2010 U.S. Dist. LEXIS 139068 at *29-30 (declining to expose parent to liability for subsidiary's conduct where subsidiary was a viable business in its own right and no evidence suggested that subsidiary was used to promote fraud or illegality). Ultimately, that is because Bowtech is a viable going concern in its own right, not a "shell corporation" employed by Savage to avoid legal obligations. Plaintiffs will be unable to carry their burden of showing otherwise.

---

[2] Although normally employed to assess whether an individual person is using a corporate entity as an "alter ego" in order to shield him or herself from liability, the alter ego doctrine also applies in the context of a parent-subsidiary corporate relationship. *See HOK Sports, Inc.*, 495 F.3d at 935 n 4 (so noting) (citing *Schnoor*, 482 N.W.2d at 915-16 (Iowa 1992)).

9

### III. CONCLUSION

Plaintiffs allege that defendants Savage and Bowtech directly infringed the '001 Patent. To prove their claim against Savage, plaintiffs must prove either (1) that Savage, in its own right, directly infringed the '001 Patent, or (2) that Savage's separate corporate existence should be disregarded and Savage should be exposed to liability for any alleged direct infringement by Bowtech.

As explained in detail above, however, plaintiffs cannot produce any evidence creating a factual issue as to either question. It is beyond dispute in this case that Savage's own business operations could not result in the direct infringement of the '001 Patent, and it also is beyond dispute that the circumstances of this case fall far short of supplying any justification for disregarding the Savage's separate corporate existence. Accordingly, this Court should grant this motion for partial summary judgment and dismiss Savage from this lawsuit.

Dated this 20th day of June, 2013.

Respectfully submitted,

/s/Peter E. Heuser
Peter E. Heuser, *pro hac vice*
Kimvi T. To., *pro hac vice*
1211 SW 5th Avenue, Suite 1600
Portland, Oregon 97204
Telephone: 503-222-9981
Facsimile: 503-796-2900
pheuser@schwabe.com
kto@schwabe.com

Martha Shaff
Betty, Neuman & McMahon PLC
111 East Third Street, Suite 600
Davenport, Iowa 52801
Telephone: 563-326-4491
Facsimile: 563-326-4498

Attorneys for Defendants

10

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 20th day of June, 2013, I caused to be served the foregoing

**DEFENDANTS' MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR**

**PARTIAL SUMMARY JUDGMENT** on the following parties via the CM/ECF system:

> J. Campbell Helton
> Matthew D. Giles
> WHITFIELD & EDDY, PLC
> 317 Sixth Avenue, Suite 1200
> Des Moines, Iowa  50309-4195
> Email: helton@whitfieldlaw.com;
>         giles@whitfieldlaw.com
>
> Brett J. Trout
> LAW OFFICES OF BRETT J. TROUT
> 516 Walnut Street
> Des Moines, Iowa  50309
> Email: trout@bretttrout.com
>
> Attorneys for Plaintiffs

> /s/Peter E. Heuser
> Peter E. Heuser

1

PDX\123479\187268\JOR\11555339.1